IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

CRYSTAL CHAPMAN,

    Plaintiff,

V.                                        CIVIL ACTION NO. 3:04-0930

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

**FINDINGS AND RECOMMENDATION**

        In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff protectively filed her applications on May 6, 2002, alleging disability commencing December 13, 1999, as a consequence of two bulging cervical discs, knee pain, numbness, hearing problems, diabetes, headaches and polycystic ovarian syndrome. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was thirty-four years of age and had obtained a high school education. Her past relevant employment experience consisted of work as a cashier, cook and grocery stocker. In his decision, the administrative law judge determined that plaintiff suffers from "severe obesity ... with exertional shortness of breath complicated by smoker's asthma [and] allergies, dorsal-lumbar strains/pains, ... degenerative arthritis of the cervical spine ... with radicular pains, ... non insulin-dependent diabetes mellitus, hypertension with lightheadedness and headaches, degenerative and osteoarthritic joint pains in the knees..., diminished visual acuity without classes [sic], borderline I.Q. ... and a depressive disorder not otherwise specified," impairments he found severe. Concluding that plaintiff retained the residual functional capacity for a limited range of light level work and that her past work as a cashier was not precluded by these limitations, the administrative law judge found her not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. The primary impairment about which plaintiff has complained is neck and right shoulder pain which she testified goes, at various times, either up her neck, around into her chest or down her right arm. She was evaluated for chest pain with a stress test and echocardiogram in March of 2002. Both tests were negative and her chest pain has been diagnosed as "atypical." Diabetes was diagnosed in mid-2001 and has been treated with medication with varying degrees of control. As the administrative law judge observed, however, there is no indication that plaintiff has experienced any negative effects from this disease or from hypertension, which has been described as under good control in most reports.

Reports from 1989 document a history of arthroscopic surgery on the right knee without evidence of subsequent complications. Plaintiff has complained of knee pain only

2

infrequently and exams have not demonstrated any range of motion, neurological or gait abnormalities. Obesity and asthma cause plaintiff to experience shortness of breath at times. She has indicated that the two inhalers she is prescribed do help and there is no evidence of hospitalization or significant treatment for pulmonary problems.

On her alleged onset date, plaintiff was hospitalized after threatening to commit suicide. The hospital report says she really just wanted to discontinue the medication Prozac. Upon release the following day, she was advised to seek psychological treatment but there is no indication she did. In fact, in January of 2000, she requested that she be put back on Prozac. There is little mention of anxiety or depression subsequent to this time and emergency room reports where plaintiff sought treatment for other conditions reflect that she denied any problems in this regard. The Commissioner had her evaluated by Elizabeth Durham, M.A., on July 9, 2003. Observations included a dysphoric mood and restricted affect as well as mildly deficient concentration. Plaintiff was cooperative, however, interacted appropriately and displayed normal judgment and memory. I.Q. testing produced scores in the borderline range and Ms. Durham diagnosed depressive disorder not otherwise specified in addition to borderline intellectual functioning. She assessed plaintiff as having a poor ability (seriously limited but not precluded) to handle complex and detailed work instructions but rated all other areas as fair (limited but satisfactory).

On October 22, 1999, plaintiff was injured when a freezer lid came down on her head and neck at work. She was referred by the hospital to Dr. Jack Steel for treatment and saw him initially on February 9, 2000, with complaints of pain in the right upper arm radiating into the forearm. While tenderness was observed around the right shoulder, trapezius and right side of the neck, motor strength, sensation and reflexes in the upper extremities were intact. An X-ray was

interpreted as showing no significant degenerative changes. Diagnosing chronic cervical sprain, this physician prescribed physical therapy. A cervical MRI performed June 19, 2000, was interpreted as consistent with mildly bulging annuli at the C4-5 and T3-4 levels.

A neurological exam in July of 2000 by Dr. Carl McComas did not reveal any cause for plaintiff's complaints of frequent headaches and he diagnosed benign recurrent daily headaches. Two months later, Dr. Steel again noted an absence of neurological deficits in the upper extremities and opined that, while plaintiff had radicular components to her cervical pain, they were non-anatomic. In a report following a neurosurgical consultation on November 21, 2000, Dr. Jerry Day observed a full range of motion of the cervical spine, good range of motion of the right arm with no evidence of radiculopathy, and normal motor functioning in the upper extremities. Diagnosing cervical sprain, Dr. Day prescribed a home TENS unit as well as medication. Plaintiff reported to Dr. Steel two months later that the medication did not help and she was still experiencing neck and shoulder pain. While examination at this time revealed some pain with shoulder motion, muscle strength was preserved and Dr. Steel's diagnosis remained the same.

Plaintiff subsequently began treatment at the St. Mary's Hospital Pain Relief Center where she received trigger point injections in August and September of 2001 and cervical epidural steroid injections. Dr. Felix Muniz, who initially treated her there, reported on February 21, 2002, that plaintiff felt these injections provided no relief. Exam on that date revealed good range of motion in the neck without upper extremity neurological deficits, although Dr. Muniz did detect some spasm in the upper back and right trapezius tenderness. A July 30, 2002, report from plaintiff's treating family physician, Dr. Thacker, reflects complaints of pain in the lower

extremities; however, exam showed full range of motion of the legs without tenderness of the knees or ankles.

Dr. Paul Craig performed an independent medical exam for workers' compensation purposes on January 7, 2003. Mild elevation of the right trapezius and complaints of severe pain with palpation were recorded as well as the presence of trigger points, tenderness of the right occiput and right sternocleidomastoid muscle, limited range of motion of the neck due to tightness of muscles, symmetrical decrease in upper extremity reflexes and a slight reduction in right hand grip strength. Upper extremity strength was full, however, and there was no sign of muscle atrophy or wasting.

Dr. Craig commented that plaintiff seemed to have a somatic preoccupation with her condition and noted the pain levels she reported were much higher than he would have expected. He concluded there was no evidence of any radicular deficit or of any disc injury. At the time of his report, however, he did not feel plaintiff had reached maximum medical improvement. In a February 26, 2003 note, Dr. Caraway, who succeeded Dr. Muniz as plaintiff's treating physician at the pain center, indicated he completely agreed with Dr. Craig's findings. He noted plaintiff was losing weight and was in an "aggressive" home exercise program. The following month, plaintiff went to the emergency room with complaints of knee, back and hand pain she alleged had begun several months earlier. Exam revealed full range of motion of all extremities, and the diagnosis was extremity pain and fibromyalgia. Finally, Dr. Thacker saw plaintiff in follow-up from this emergency room visit. Plaintiff reported difficulty with numbness in her left fourth and fifth fingers which usually began at night and lasted about half of the day. Exam revealed findings consistent with carpal tunnel syndrome in the left hand for which Dr. Thacker prescribed splints to be worn in

the evening as well as medication which was also noted to be for osteoarthritis in the knees. Though the second hearing was not held for approximately eight months after this date, there were no further medical reports submitted.

Aside from the consulting psychologist's assessment of plaintiff's mental residual functional capacity, none of the examining or treating physicians offered an opinion on this issue nor did they indicate that she was unable to perform any type of work. The state agency medical advisors who evaluated the evidence expressed opinions that plaintiff could perform light level work. One evaluator found that, additionally, she could only occasionally climb, balance, stoop, kneel, crouch and crawl and should avoid concentrated exposure to extreme cold and heat and to hazards. The other evaluator concluded only that plaintiff should avoid concentrated exposure to fumes, gases, etc. The state agency psychologist who reviewed the evidence found no medically determinable mental impairment.

The administrative law judge, citing to the conservative treatment plaintiff had received and the limited clinical signs of diminished range of motion and mildly reduced deep tendon reflexes and grip strength per Dr. Craig's report, concluded that plaintiff could perform the lifting requirements of light level work. To this he added extensive limitations consisting of ability to walk four hours, one hour at a time; stand five to six hours, one hour at a time; no repetitive pushing/pulling with the upper extremities; no sustained repetitive overhead work or work requiring use of hand-held vibrating-type power tools; no climbing hills/slopes or high ladders; and, no work on uneven terrain or at unprotected heights. He further found plaintiff could only occasionally climb stairs/steps/ramps, bend/stoop, crouch/squat or kneel and could never balance, crawl, work in the vicinity of heavy moving machinery, be exposed to excessive floor vibrations, operate mobile

equipment or be exposed to jarring, jostling or jolting. In addition, plaintiff could not perform repetitive operation of foot controlled equipment or repetitive forceful "pincher" type gripping and should not be exposed to excessive air pollutants, pulmonary irritants, allergens, damp/humid conditions and must be allowed to wear protective eyeglasses as desired. Mentally, the administrative law judge noted plaintiff's I.Q. and academic functioning but found no other limitations on her ability to function mentally in the work setting.

The extensive residual functional capacity findings are generous in light of the modest objective findings in the medical reports. While the portion of his assessment pertaining to mental limitations does not include a listing like that from Ms. Durham, the administrative law judge's inclusion of plaintiff's I.Q. scores and academic functioning scores make it clear she should not perform work involving complex or detailed instructions. The rest of the areas assessed by Ms. Durham were considered satisfactory. Given these factors, the Court concludes that the administrative law judge's findings clearly have substantial support in the record.

While the administrative law judge concluded that plaintiff's residual functional capacity would not prevent the performance of her past work as a cashier/stocker, it was not clear from his order how carefully he evaluated this job in light of the numerous limitations he found.[1] The Court cannot, therefore, conclude that substantial evidence supports this finding. In addition to finding an ability to perform past work, however, the administrative law judge determined, in reliance on vocational expert testimony, that plaintiff could perform significant numbers of other light and sedentary jobs in the national economy. In making these findings and in questioning the

---

[1] See, 20 C.F.R. §§404.1560(b), 416.960(b).

vocational expert, it is apparent the administrative law judge considered all of plaintiff's impairments in combination, and his decision is well-supported by substantial evidence.

While plaintiff complained of significant limitations on her ability to work due mainly to pain, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that her credibility was only fair. In so finding, he referred to plaintiff's conservative treatment, the small number of objective abnormalities documented, the inconsistencies between her voiced complaints to Dr. Craig and what his exam actually revealed, her lack of mental health treatment for anxiety or depression, and her daily activities, which are more extensive than would be expected based on her allegations. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As noted, a vocational expert was present at the hearing and, when given a hypothetical question containing plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, this witness testified that there were significant numbers of light and sedentary jobs in the national economy which she could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to

plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: November 29, 2005

/s/ Maurice S. Taylor, Jr.
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE